**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**BRADLEY KEITH PICKETT**                                                    **PLAINTIFF**

**V.**                                                          **NO. 3:13-CV-95-DMB-SAA**

**PANOLA COUNTY, MISSISSIPPI,
AND CHRIS FRANKLIN**                                                    **DEFENDANTS**

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Bradley Keith Pickett filed this lawsuit against his former employer, Panola County, Mississippi, for discrimination and/or retaliation under the Uniformed Services Employment and Reemployment Rights Act of 1984 ("USERRA") and against his former supervisor, Chris Franklin, for malicious interference with employment under Mississippi law. Plaintiff asserts that Panola County terminated him because of his military status and that Franklin willfully and maliciously interfered with his employment, thereby causing him to suffer actual and punitive damages. Defendants have moved for summary judgment on grounds that Plaintiff's USERRA claims fail because he was not terminated but resigned from his position, and that his malicious interference claim fails because he did not provide pre-suit notice as required under Mississippi law. For the reasons below, the Court finds that Defendants' motion for summary judgment should be granted in part and denied in part.

**I**

Plaintiff joined the Mississippi Army National Guard in 1990 and served two and a half years before receiving an honorable discharge. Pl.'s Dep. [54-1] at 3. In 2006, Plaintiff began working as a jailer with the Panola County Sheriff's Department. *Id*. at 8-9. In October 2010, while still working as a jailer, Plaintiff reenlisted with the Mississippi Army National Guard. *Id*.

at 3, 9. He was later given military orders that required him to leave his job for approximately nineteen weeks. Plaintiff did not have any complaints or issues with Panola County regarding his military leave while he was a jailer. *Id.* at 13. On some occasions, Plaintiff's military orders were delayed and, as a result, were given to his supervisor late. *Id.* at 15. Plaintiff claims, however, that his then-supervisor never required him to use sick days or vacation days to go on military leave. *Id*. at 13.

Plaintiff eventually applied for law enforcement positions and, in January 2012, was hired as a deputy with the Panola County Sheriff's Department. *Id*. at 11; Doc. [54-7]. He was sent to the police training academy for his new position and, like other new employees, placed on a one-year probationary period. *See* Defs.' Mem. Br. [51] at Ex. B. At the time Plaintiff was hired, Dennis Darby was Sheriff of Panola County, and Chris Franklin was Chief Deputy. Pl.'s Dep. [54-1] at 11. Supervisory officials were ranked in descending order as follows: sheriff, chief deputy, major, captain, and then lieutenant. Perkins Dep. [54-10] at 3-4; Lambert Dep. [54-13] at 2; Taylor Dep. [54-22] at 2.

When Plaintiff returned from police training in March 2012, he began to notice that his military absences might be causing problems for his supervisors. Pl.'s Dep. [54-1] at 14. According to Plaintiff, he began to feel pressure from his supervisors whenever his military orders were delayed. *Id*. Plaintiff maintains that he submitted drill and annual training schedules approximately one year in advance. *Id.* at 16; Perkins Dep. [54-10] at 5. Sometimes, however, his drill schedule changed, he had to report to duty for other reasons, or he received military orders without much advance notice. *See* Pl.'s Dep. [54-1] at 16-17, 27. For example, Plaintiff received orders dated April 20, 2012, directing him to report to active duty training from April 23, 2012, to April 26, 2012. Doc. [54-29]. By orders dated May 31, 2012, Plaintiff was required

to report to annual training from June 10, 2012, to June 24, 2012. Doc. [54-30]. By orders dated July 17, 2012, he was required to report to active duty training from July 16, 2012, to July 28, 2012.[1] Doc. [54-12].

After returning to work on or about July 31, 2012, Plaintiff had a meeting with Chief Deputy Franklin and two other high-ranking officers. Pl.'s Dep. [54-1] at 30. According to Plaintiff, the officers told him during the meeting that he would have to choose between his job and military obligations. *Id*. Plaintiff claims that he gave the officers a guide/handbook regarding USERRA, but the tone of the meeting did not change. *Id*. Still, none of the supervisory officers told Plaintiff he would be terminated. *Id*. at 22, 40.

By letter dated December 17, 2012, Plaintiff applied for the position of K-9 Officer. *See* Doc. [54-15]. He was not selected for the position. Darby Dep. [54-5] at 11-13.

On January 3, 2013, Plaintiff and Franklin had a dispute at the Sheriff's Department regarding a time sheet Plaintiff had completed. Pl.'s Dep. [54-1] at 33; Franklin Dep. [54-6] at 6-7. When Franklin questioned Plaintiff about the time sheet, the two got into an argument that escalated into a physical altercation wherein they pushed and/or grabbed one another before falling onto the floor. Pl.'s Dep. [54-1] at 34-35; Franklin Dep. [54-6] at 6-7; McDonald Dep. [54-19] at 3. Shortly after their altercation, Plaintiff and Franklin sat down and talked about their issues. Pl.'s Dep. [54-1] at 35-36; Franklin Dep. [54-6] at 7-8. A lieutenant at the Department was present during their conversation. Taylor Dep. [54-22] at 3. On January 8, 2013, Sheriff Darby gave Plaintiff the option of resigning or being terminated. Darby Dep. [54-5] at 3. That day, Plaintiff submitted a letter notifying Panola County of his resignation from employment with the Sheriff's Department. Doc. [54-26].

---

[1] Thus, Plaintiff was called to active duty for a term that began one day before the date of the order mandating that he report to active duty.

On April 11, 2013, Plaintiff filed a complaint in this Court against Panola County for forcing him to resign in violation of USERRA. *See* Compl. [1]. On September 24, 2013, Plaintiff filed an amended complaint adding Franklin to the lawsuit and asserting a claim against him for malicious interference with employment.[2] *See* Am. Compl. [20]. On January 13, 2014, Plaintiff filed a supplemental complaint and attached the notice of claim that he sent to Defendants regarding his malicious interference claim. *See* Supp. Compl. [30]. Defendants filed the instant motion for summary judgment on July 31, 2014. Plaintiff responded in opposition to the motion. Defendants did not file a reply brief, and the time for doing so has expired. *See* L.U. Civ. R. 7(6)(4); Fed. R. Civ. P. 6(d). The motion is now ripe for resolution.

## II

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be entered when the evidence in a case shows there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment is appropriate, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating whether summary judgment is appropriate in a case, a district court must review all well pleaded facts in the light most favorable to the nonmoving party. *Pratt v. City of Houston,* 247 F.3d 601, 606 (5th Cir. 2001).

The party seeking summary judgment must inform "the district court of the basis for its motion, and identify[] those portions of [the record] which it believes demonstrate the absence of

---

[2] The Court has subject matter jurisdiction over Plaintiff's USERRA claims based on a federal question. *See* 28 U.S.C. § 1331. The Court may exercise supplemental jurisdiction over Plaintiff's malicious interference claim because it is "so related … that [it] form[s] part of the same case or controversy[.]" 28 U.S.C. § 1367.

a material fact." *Catrett*, 477 U.S. at 323. The party opposing summary judgment must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (citations omitted). The nonmoving party cannot rely on metaphysical doubt, conclusive allegations, or unsubstantiated assertions but instead must show that there is an actual controversy warranting trial. *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations and quotation marks omitted). In the absence of proof, the district court should not assume that the nonmoving party could have proved the necessary facts. *Paz v. Brush Engineered Materials, Inc*., 555 F.3d 383, 391 (5th Cir. 2009). "A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Washington v. Armstrong World Indus*., 839 F.2d 1121, 1122 (5th Cir. 1988).

### III

The purposes of USERRA are threefold: (1) "to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian employment which can result from such service"; (2) to provide "prompt reemployment" of persons returning to civilian jobs from service so as to "minimize the disruption [of their] lives … as well as [to those of] their employers, fellow employees and communities"; and (3) to prohibit discrimination against persons because of their service" in the military. 38 U.S.C. § 4301(a); *Rogers v. City of San Antonio*, 392 F.3d 758, 762 (5th Cir. 2004). The term "uniformed services" includes "the Armed Forces, the Army National Guard and the Air National Guard when engaged in active duty for training, inactive duty training, or full-time National Guard duty[.]" 38 U.S.C. § 4303(16).

Consistent with one of it purposes, USERRA bars discrimination against persons based on their service in the military. *Id*. at § 4311. The anti-discrimination provision of USERRA,

found in 38 U.S.C. § 4311, provides that a service member "shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer" based on his or her military service. *Id.* at § 4311(a). Moreover, "an employer must not retaliate against a person by taking adverse employment action against that person because he or she has taken an action to enforce protection under USERRA." *Rogers*, 392 F.3d at 762 (citing 38 U.S.C. § 4311(b)).

An employer violates USERRA if "membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor" in the employer's adverse decision. 38 U.S.C. § 4311(c)(1). However, an employer is not liable under USERRA if it "can prove that the [adverse] action would have been taken in the absence of such membership, application for membership, service, application of service, or obligation for service[.]" *Id.* Thus, "a plaintiff in a Section 4311 claim is [required] to prove that military status was a motivating factor in the employer's actions." *Bradberry v. Jefferson Cnty.*, 732 F.3d 540, 551 (5th Cir. 2013) (citing 38 U.S.C. § 4311(c)(1)). "By referring to a 'motivating factor,' [USERRA] does not textually suggest that military service be the sole factor." *Bradberry*, 732 F.3d at 545. Instead, "if one reason for the employer's actions was [military service] … then that reason was a motivating factor." *Id.* at 551.

In their motion, Defendants argue that they did not retaliate or otherwise discriminate against Plaintiff based on his military status. They claim that Plaintiff was terminated for a series of major infractions, including dereliction of duty and the physical altercation he had with Franklin. Defendants further argue that even if military status was a motivating factor, Panola County would have made the same decision to terminate Plaintiff without regard to such status. In support of their motion, Defendants submit deposition testimony and documentation of

Plaintiff's alleged failures to follow commands of his supervisors. Defendants also note that the physical altercation between Plaintiff and Franklin resulted in damage to a door and other property at the Sheriff's Department.

Plaintiff argues in response that summary judgment should be denied because the evidence in this case establishes that Defendants retaliated and/or discriminated against him based on his military status. Plaintiff heavily relies on deposition testimony from Sheriff's Department employees to support his USERRA claim. He also argues that Defendants do not present sufficient evidence to invoke the same decision defense. Plaintiff further contends that Defendants retaliated against him after he gave them a guide discussing USERRA.

USERRA affords certain protections to service members, but it "does not exempt those in the military from complying with the usual rules of behavior in the workplace or being subject to the usual discipline." *Bradberry*, 732 F.2d at 551. Defendants point to several infractions and write-ups Plaintiff received during his probationary period, and they allege that he was terminated for serious misconduct rather than anti-military animus. Aside from his altercation with Franklin, Plaintiff received complaints and/or write-ups for disobeying direct orders from supervisors, setting up a one-car roadblock, and stopping people in his private vehicle while off-duty and wearing plain clothes. *See*. Defs.' Mem. Br. [51] at 3-5, Ex. C.

Sheriffs in Mississippi "are final policymakers with respect to all law enforcement decisions made within their counties." *Brooks v. George Cnty.*, 84 F.3d 157, 165 (5th Cir. 1996) (citing *Huddleston v. Shirley*, 787 F. Supp. 109, 112 (N.D. Miss. 1992)). Although Defendants argue that Plaintiff was terminated for reasons other than his military status, Sheriff Darby testified that he considered Plaintiff's military absences in reaching his decision to terminate him. Sheriff Darby testified by deposition that Plaintiff was terminated for "failure to follow

instructions and not getting along with [others]," including coworkers, supervisors, and the general public.  Darby Dep. [54-5] at 3.  But when asked whether Plaintiff was terminated for other reasons, he explained,

> Well, part of it, and I know that is what we're here for today, is the military thing.  And it was not that we have any problem with military.  It is the manner in which he, you know, approached us with it and the attitude he had.  You know, I had different – several different occasions to talk to him personally about this.

*Id*.  Sheriff Darby noted that Plaintiff often gave short notice for his military orders and that his absences affected the work schedules of other deputies in the Department.  *Id.* at 6.  The parties do not dispute that Sheriff Darby gave Plaintiff an ultimatum of resigning or being terminated in January 2013 following the altercation with Franklin.  *See id*. at 3; Defs.' Mem. Br. [51] at 10.

In addition to Sheriff Darby's testimony, Plaintiff relies on testimony of his former colleague, Deputy John Summerville.  Plaintiff claims that, while he was on military leave in July 2012, Summerville called and advised him that Franklin had complained during a staff meeting about Plaintiff's military absences becoming a problem.  Pl.'s Dep. [54-1] at 17.  When asked at deposition, Summerville denied saying that Franklin complained about the absences but testified that Captain Albert Perkins[3] told deputies they would have to continue working eight-hour shifts because of Plaintiff's military absences.  Summerville Dep. [54-14] at 3-4.  Summerville further testified that the absences caused stress on the Department.  *Id*. at 3.

Captain Albert Perkins testified by deposition that he jokingly told deputies during a meeting that they could thank Plaintiff for not being able to switch from an eight-hour shift to a twelve-hour shift.  Perkins Dep. [54-10] at 4.  Perkins also testified that Plaintiff was asked to resign or be terminated because of his military leave and his physical altercation with Franklin.  *Id*. at 3.

---

[3] Though Summerville referred to Albert Perkins as a lieutenant, Perkins clarified during his deposition that he was a captain during the relevant time period.  Perkins Dep. [54-10] at 3; Summerville Dep. [54-14] at 4.

Similarly, Plaintiff alleges that he and Franklin had a conversation in July 2012, wherein Franklin told him that the Department could not go back on twelve-hour shifts because Plaintiff was often gone and that deputies would work eight-hour shifts until more people were available. Pl.'s Dep. [54-1] at 19. Plaintiff testified that his supervisors pressured him when his military orders were late and told him that, without orders, they did not have to let him leave. *Id.* at 22. Still, however, Plaintiff's supervisors never prevented him from reporting to military duty. *Id.* Plaintiff claims he gave Franklin a guide on USERRA and that Franklin told him, essentially, that he did not care what the law said. *Id.* at 30.

Lieutenant Billy Lambert, Plaintiff's then-supervisor, testified by deposition that he made negative comments about Plaintiff's military leave. *See* Lambert Dep. [54-13] at 3 ("I don't remember the exact words. I'm sure they were harsh and to the effect of, 'I wish to hell he'd come to work.' You know, 'I need him to work.' 'Why isn't he at work?' kind of thing."). Lieutenant Lambert also testified that he once told Plaintiff to choose between the Sheriff's Department and the military. *Id.* at 4 ("I mean, it had gotten to the point where I told Brad, I said, 'Brad, just make a decision and only work for one.'").

Construing the facts and evidence most favorably to Plaintiff, the Court finds that material fact issues exist warranting denial of summary judgment on Plaintiff's USERRA claims at this time. *See Hill v. Michelin N. Am., Inc.*, 252 F.3d 307, 313 (4th Cir. 2001) (reversing summary judgment because fact question existed as to whether plaintiff's military status was motivating factor in job transfer); *Gillie-Harp v. Cardinal Health, Inc.*, 249 F. Supp. 2d 1113, 1114-15 (W.D. Wis. 2003) (denying summary judgment where "reasonable jury could find that plaintiff's military status was a motivating factor in defendant's decision to terminate"). Based on the record, it appears that Plaintiff has valid claims for USERRA discrimination and/or

retaliation. Despite the multiple infractions Plaintiff allegedly committed during his employment with Panola County, the Court cannot reasonably conclude that Defendants would have terminated him without regard to his military status, particularly in light of Sheriff Darby's testimony. *See generally Harris v. City of Montgomery*, 322 F. Supp. 2d 1319, 1328 (M.D. Ala. 2004) (denying summary judgment on USERRA claim where reasonable jury could infer discriminatory motivation by defendant providing inconsistent reasons for not giving plaintiff merit-based raise); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge … "). As such, Defendants' motion must be denied with respect to the claims brought under USERRA.

## IV

Defendants additionally seek summary judgment on Plaintiff's state law claim of malicious interference with employment on grounds that Plaintiff failed to provide pre-suit notice as required by the Mississippi Tort Claims Act ("MTCA"). *See* Miss. Code Ann. §§ 11-46-1, *et seq.* Under the MTCA, a political subdivision's sovereign immunity is waived "from claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment[.]" *Id*. at § 11-46-5(1). However, a plaintiff with a claim falling within the MTCA's scope is required to "file a notice of claim with the chief executive officer of the governmental entity" at least ninety days before filing suit. *Id*. at § 11-46-11. "The notice-of-claim requirement, which is jurisdictional, 'imposes a condition precedent to the right to maintain an action.'" *Papagolos v. Lafayette Cnty. Sch. Dist.*, 972 F. Supp. 2d 912, 931 (N.D. Miss. 2013) (quoting *Miss. Dep't of Pub. Safety v. Stringer*, 748 So. 2d 662, 665 (Miss. 1999)).

Although there are inconsistent rulings by the Mississippi Supreme Court as to whether claims such as malicious interference with employment fall within the scope of the MTCA,[4] Plaintiff does not challenge Defendants' argument that the claim is covered by the MTCA. Therefore, for purposes of its analysis, the Court assumes Plaintiff has conceded this issue.

Plaintiff's notice of claim is dated September 10, 2013, and was presumably delivered that day. Plaintiff added Franklin to this case on September 24, 2013, when he filed the first amended complaint. *See* Am. Compl. [20]. Thus, Plaintiff provided notice to Defendants fourteen (14) days before initiating this action against Franklin. After Franklin was served on October 29, 2013, the case docket reflects no activity took place between the parties until January 3, 2014, when Plaintiff moved for leave to file a supplemental complaint. The motion was ultimately granted, and Plaintiff filed the supplemental complaint on January 13, 2014. Plaintiff appears to contend that because he waited the requisite time period before filing his supplemental complaint, the notice provision has been met and Defendants' argument lacks merit. Defendants did not file a reply brief in response to this argument. The Court will look to Mississippi case law for guidance on this issue.

In *University of Mississippi Medical Center v. Easterling*, the Mississippi Supreme Court held that "the responsibility to comply with the ninety-day notice requirement under Section 11-46-11(1) lies with the plaintiff. After the plaintiff gives notice, he must wait the requisite ninety days before filing suit." 928 So. 2d 815, 820 (Miss. 2006). The plaintiff in *Easterling* filed a lawsuit almost four months before giving notice. *Id*. at 819. The Mississippi Supreme Court abrogated its prior cases finding that the burden was on the defendant governmental entity to

---

[4] *Compare Zumwalt v. Jones Cnty. Bd. of Supervisors,* 19 So. 3d 672, 688 (Miss. 2009) ("With respect to the claim of tortious interference with business relations and/or contracts, the MTCA does not apply.") *with Whiting v. Univ. of S. Miss.*, 62 So. 3d 907, 916 (Miss. 2011) (finding that "the MTCA covers both tortious breaches of contract and breaches of implied terms and warranties of a contract").

seek a stay of the proceedings in such cases so that it could have the benefit of ninety days' notice or, otherwise, the issue would be waived. *Id*. The court noted that the plaintiff "had the option of dismissing her prematurely filed action, properly serving notice of her claim, and then waiting the ninety-day period, and if [her] claims against UMMC were still unresolved, [she] could properly have filed her action." *Id*.

This Court and the Southern District of Mississippi have applied the hardline strict compliance standard set forth in *Easterling*. *See Stuckey v. Mississippi Dep't of Transp.*, 2008 WL 1868421, at *3 (S.D. Miss. Apr. 24, 2008) (dismissing state law claims for failure to comply with MTCA notice requirement where plaintiff delivered notice eighty-three days before filing suit); *Hardy v. City of Senatobia*, 2007 WL 3245163, at *4 (N.D. Miss. Nov. 1, 2007) (finding plaintiff failed to comply with MTCA notice requirements where notice was delivered approximately sixty-three days before suit commenced); *Banner v. City of Jackson*, 2007 WL 433245, at *4 (S.D. Miss. Feb. 5, 2007) (granting summary judgment and finding "plaintiffs were required to wait ninety days from the date on which they submitted their Notice of Claim before filing their Complaint, regardless of the fact that the City of Jackson denied liability"); *Comer v. Lindley*, 2008 WL 2704593, at *10 (N.D. Miss. July 7, 2008) (dismissing state law claims for failure to comply with MTCA notice requirements where only seventy-eight days elapsed between date notice was sent and case was filed).

In *Bunton v King,* the Mississippi Supreme Court addressed attempts to cure a failure to comply with MTCA notice requirements. 995 So. 2d 694, 696 (Miss. 2008). The plaintiffs in *King* filed suit seven days after sending their notice of claim letter. *Id*. The defendant moved to dismiss for failure to comply with the MTCA. *Id*. at 695. The plaintiffs requested and were granted leave to amend their complaint. *Id*. The trial court found that MTCA notice

requirements were satisfied because the amended complaint was filed more than 90 days after notice was given. *Id.* On appeal, the Mississippi Supreme Court reversed the trial court's ruling and found the argument that plaintiffs' amended complaint cured the notice problem lacked merit. *Id.* at 696 ("The Kings' argument that … the amended complaint cured the ninety-day-notice problem is without merit.").

As demonstrated in *Easterling* and *King*, the Mississippi Supreme Court requires strict compliance with the MTCA's ninety-day notice provision. *See Gorton v. Rance*, 52 So. 3d 351, 358 (Miss. 2011) ("This Court strictly applies the ninety-day-notice requirement of Section 11-46-11(1).") (citations omitted); *Price v. Clark*, 21 So. 3d 509, 518-19 (Miss. 2009) ("Strict compliance with statutory notice is required, regardless of why the plaintiff failed to provide notice.") (citations omitted). Because it is undisputed that Plaintiff delivered notice less than ninety days before commencing this suit against Franklin, Plaintiff failed to comply with the MTCA notice requirement and his malicious interference claim must be dismissed. *See generally Price*, 21 So. 3d at 522 ("While failure to provide proper statutory notice cannot be cured by serving notice-of-claim letters after a complaint is filed, a properly served complaint—albeit a complaint that is wanting of proper pre-suit notice—should still serve to toll the statute of limitations until there is a ruling from the trial court."). Accordingly, Defendants' motion for summary judgment is granted with respect to this claim.

## V

Based on the analysis above, the Court finds that Defendants' motion for summary judgment should be granted in part and denied in part. Material fact issues exist in this case regarding whether Plaintiff was discriminated and/or retaliated against based on his military status; therefore, Defendants' motion is denied as to the claims under USERRA. The motion is

granted as to the state law malicious interference claim because Plaintiff failed to comply with

the MTCA's ninety-day notice requirement.

SO ORDERED, this the 30th day of January 2015.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**